### LEASES PERFECT IN FORM BUT DEFECTIVE IN FACT.

RUDOLPH J. HOFFSTETTER, vs. JOHN HARRIS.*

Common Pleas Court of Franklin County.

Decided, March 18, 1921.

*Landlord and Tenant—Lease Defective and Lessee Evicted—Liability of
the Lessor for Loss Sustained by Reason of the Eviction—Compe-
tency of the Testimony of Witnesses to Execution of a Lease—Ten-
dency of the Courts to Favor the Lessee.*

1. Where the testimony clearly shows that the parties concerned in-
tended to execute a lease, and the instrument which was executed
proves to be a lease defective in form but perfect in fact, it is of
binding force upon the parties thereto, not as a contract for a lease
but as a lease.

2. Eviction of one conducting a going business under such a lease,
renders the lessor liable for the earnings or profits of the business
during the remainder of the term of the lease, plus expenses to
which the lessee was subjected by reason of the eviction proceed-
ings; but the value of the good will, which would have diminished
until it became nothing at the end of the lease, is of too specula-
tive a character to afford a basis for an award of damages.

*Affirmed by the Court of Appeals. November 21, 1921.

*C. E. Blanchard* and *M. V. Kessler*, for plaintiff.
*Taylor, Williams, Cole & Harvey*, for defendant.

SOWERS, J.

The plaintiff is suing the defendant for damages by reason of the breach of lease entered into between the plaintiff and the defendant on the 20th day of March, 1915, for a period of five years, ending on the 31 day of March, 1920.  He pleads three causes of action as the bases of damages, namely:

First:  He alleges that he was ejected from the premises on the 17th day of July, 1919, by action of the municipal court of Columbus.

Second:  He alleges that by reason of the occupancy of said premises he had established a good will which was of value; and,

Third:  That in defending in the ejectment suit in the municipal court he incurred expenses, which are a part of his damages.

Plaintiff asks a total sum of $7,000.

The defendant in his answer admits the occupancy of the premises as claimed by the plaintiff, that a suit in ejectment was brought against the plaintiff alleging that it was brought by the Hoster-Columbus Company, Inc., and admits that the plaintiff was ejected on the 19th day of July, 1919, but denies all the other allegations of the petition.

The case was tried before the court, a jury being waived, and the testimony developed the following facts: that the paper writing attached to plaintiff's petition purporting to be a lease was executed as shown in the writing; that no rent was paid thereon after June 1st, 1919, although tendered to defendant by plaintiff, the defendant having previously given the plaintiff notice to vacate; that the defendant was a tenant by the month, in the premises occupied by him from which a part was sublet by him to plaintiff; and that the plaintiff was ejected as claimed by him in the petition.  The writing shows that it was properly acknowledged by M. V. Kessler as notary public, who signed as a witness for the plaintiff and one Frank Reinhart signed as a witness for the defendant.  The court is of the opinion that it was proper to admit the testimony of the witnesses as to the execution of this writing, as it is one of the primary objects in re-

quiring witnesses that they may prove the execution of the instrument.

The testimony of Reinhart on this point was that he signed the lease in the defendant's place of business, when there were a large number of people present, but he does not identify them.

The testimony of Kessler is to the effect that the plaintiff called him to acknowledge the lease and they together proceeded to the defendant's place of business, where it was signed and acknowledged in the presence of both witnesses by both the plaintiff and the defendant, and the writing following the names of the witnesses was inadvertently made by him, being suggested by a former lease existing between the parties. It was properly recorded and no question is raised as to its validity on this account. The statute requires that a lease of real property for this length of time must be acknowledged by the lessor in the "presence of two witnesses who shall attest the signing and subscribe their names to the attestation."

The validity of the lease is attacked by the defendant upon the ground that it was not executed in accordance with the provisions of the statute. The court has examined with great care all the authorities cited by counsel for both plaintiff and defendant and while these various authorities are helpful, none of them seem conclusive upon the subject under consideration. The lease in the case at bar has two witnesses, but the writing after each name indicates for whom the witness acted. This writing is explained by Mr. Kessler in his testimony (*supra..*)

Tiffany on Real Property at Section 459 states the following principle:

"The witness need not be present at the actual signing of the instrument by the grantor, provided the latter acknowledges to him that it is his act, and expressly or implied requests him to attest the instrument."

This authority defines the latitude extended to witnesses in their attestation of conveyances.

The United States Supreme Court in a case from Michigan, found in 127 U. S., p. 326, *Culbertson* v. *Witbeck Co.,* in construing a similar statute speaks as follows:

"The statutes of Michigan require the attestation of two witnesses to the grantor's signature. A deed of husband and wife was offered in evidence, the attestation to which was: 'Signed, sealed and delivered in presence of S. W.' for the husband; 'W. H.R., G. H.' for the wife; and there was a certificate that the word 'half' in the twelfth line was interlined before signing 'S. W., E. W.' E. W. Signing this certificate with S. W. was the justice of the peace who took the acknowledgment, and his certificate of acknowledgment stated that he knew the person who made the acknowledgment to be the person who executed the instrument. Held, that the execution of the deed was proved, and it was properly admitted in evidence."

This authority is valuable in that it gives a construction of the apparent defect favorable to the validity of the deed. In the case of *Lydiard* v. *Chester*, 45 Minn., p. 277, the court in discussing a defective deed, say that, "the deed offered in evidence (by the grantee) was sufficient to pass title to the real property therein described, without regard to a defect, real or pretended, in the matter of its acknowledgement."

Again the same court in the case of *Roberts* v. *Nelson*, 65 Minn., p. 540, say that the adding of the name of a witness and a certificate of acknowledgement only go to the probative force of the instrument.

In the case of *Kittle* v. *St. John*, 10 Neb., 605, the court say:

"Action for rent of a warehouse and lumberyard. Plaintiff offered in evidence a lease executed by plaintiff to defendant, witnessed, but not acknowledged or recorded, whereby the plaintiff demised the premises to the defendant for the term of five years at a rental to be paid quarterly in advance. Lease excluded by district court for the reason that it was not recorded. Held to be error, for which a new trial must be awarded."

The court in its opinion quotes Kent's Commentaries as follows:

"By the law of every state in the Union, all deeds and conveyances of land, except certain chattel interests, are required to be recorded, upon previous acknowledgment or proof. If not recorded, they are good, and pass the title as against the grantor and his heirs and devisees, and they are void only as

to subsequent *bona fide* purchasers and mortgagees whose deeds shall be first recorded.''

The court in its examination of the law has had occasion to examine other authorities which have had under consideration a similar or analogous question; among them being, *Baldwin* v. *Johnson* 21 Conn., 168; *Johnson* v. *Ins. Co.*, 46 Conn., 92; *Downs* v. *Yonge*, 17 Ga., 295; *Gardner Dexter & Co.* v. *Moore, Trimble & Co.* 21 Ga. 268;; *Johnson* v. *Jones,* 87 Ga. 85; *Weaver* v. *Coumbe*, 15 Neb. 167; *McGlauflin* v. *Halmian*, 1 Wash. 239.

The particular value of the authorities which are given here, is that they show the very marked tendency of the courts in upholding the validity of instruments of this character and giving them a construction favorable to the lessee rather than the lessor.

Our Supreme Court held in the case of *Johnson* vs. *Turner*, 7 O. (part 2) p. 216, that a deed signed by two witnesses, one of whom was incompetent, was valid; and in the case, *Garrett* v. *Garrett*, 53 O. S. p. 482, that its execution might be proved by one or more of the subscribing witnesses or the officer before whom the acknowledgment was made; and in *Building Co.* vs. *Watt*, 96 O. S. 74-84 the court say:

''A defectively executed instrument, either a lease or a deed, when made by the owner, may be enforced against him as a contract to make a lease or deed for the reason that it is his contract.''

The circuit court in the case of *Uebbing* vs. *Koester*, et al. 14 C. C. (N. S.) 553, 554, say that the deed in question was perfect in form, but admittedly defective in fact, and thereupon held it valid to support the construction of a will, and was enforced in accordance with the agreement of the parties.

In the case at bar, the lease is apparently defective in form but perfect in fact. There can be no doubt that the parties intended to execute a lease for five years, and it must naturally follow, giving full weight to the testimony, that it is valid as such an instrument and binding upon the parties thereto,

not as a contract for a lease but as a lease, and the court so finds.

The question of damages does not present nearly so difficult a problem for solution, although generally such a question may be answered more satisfactorily for the parties by the judgment of a jury than by a court. The evidence shows, and it is undisputed, that this place of business was earning $260 per month and there is no reason to believe that it would have earned less than this amount for the remaining months of the lease, namely, from July 17th 1919, to March 31st 1920, and judgment is awarded accordingly. The defendant should also pay the expenses incurred in the ejectment suit in the municipal court.

The plaintiff claims damages for loss of the good will which he had established in the business and also damages for loss of the profit in his wholesale business on goods which he would have sold through this retail business.

Whatever value he may have established in the good will of the business, it was a constantly decreasing asset the more nearly the termination of the lease approached, until its value would have been *nihil;* and just when such a time would arrive is too speculative for the court to attempt to fix, and therefore no allowance is made on this item of plaintiff's claim. Upon the other claim of plaintiff, namely, profit in his wholesale business, it is not unlike the loss asked on account of good will. As a customer, the retail store would have purchased less and less as the end of the lease approached, and it is reasonable to suppose that if he did not make a wholesale profit on this retail store, he made the same profit upon some other customer of his wholesale business, and there is no evidence to show that there was any diminution either in his wholesale business or in his profits from the wholesale business by the closing of the retail store.

The court has, therefore, reached the conclusion that no allowance should be made on this last item of plaintiff's claim.